UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

THOMAS CULBREATH,

        Plaintiff,

v.

TIMOTHY E. O'CONNOR,

        Defendant.
_____/

Case No. 2:22-cv-120

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing his complaint in the United States District Court for the Eastern District of Michigan. On June 8, 2022, that court transferred the action to this Court for further proceedings. (ECF No. 3.) Plaintiff has paid the full $402.00 filing fee.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains, however, occurred at the War Memorial Hospital in Sault Ste. Marie, Chippewa County, Michigan. Plaintiff sues Dr. Timothy E. O'Connor, the healthcare provider at War Memorial Hospital.

Plaintiff alleges that on February 25, 2021, he began "experiencing various unusual symptoms, including, but not limited to, extreme thirst and hyperglycemia, significant increase in urination, dry mouth, blurred vision, loss of appetite, and general malaise." (ECF No. 1, PageID.2–3.) He was transferred to the War Memorial Hospital, where Defendant was his attending physician and diagnosed Plaintiff with diabetes mellitus, Type 1.5; ketoacidosis; and dehydration. (*Id.*, PageID3.)

Plaintiff was admitted to the ICU. (*Id.*) On February 28, 2021, his blood glucose measured at "an astonishing" 547 mg/dL. (*Id.*) Plaintiff's glucometer reading indicated a level greater than 450 mg/dL. (*Id.*) Notwithstanding these readings and Plaintiff's diagnoses, Defendant prescribed Plaintiff "the very lowest dosage of insulin and discharged him from the hospital less than 20 hours after his admission." (*Id.*)

Days after his discharge, Plaintiff's symptoms and condition grew "progressively worse and became so severe that he was unable to stand, could not eat, and suffered a near 40-lbs weight loss." (*Id.*) On March 5, 2021, he went to the prison healthcare clinic and told the attending nurse that he was "dying." (*Id.*) The nurse noted that Plaintiff had extremely high glucose levels in his urine and contacted the nurse practitioner, who directed that Plaintiff be returned to the hospital. (*Id.*)

Plaintiff returned to War Memorial Hospital and was assessed by Dr. George Abraham (not a party), who was worried about Plaintiff's recurring diabetes ketoacidosis and decided to admit Plaintiff for further evaluation. (*Id.*) On March 5, 2021, Plaintiff's blood glucose measured 510 mg/dL. (*Id.*) Dr. Abraham diagnosed Plaintiff with suffering from latent autoimmune diabetes mellitus and noted that his lab results "were quite abnormal." (*Id.*, PageID.4.) Plaintiff's blood glucose dropped to 308 mg/dL later in the day on March 5, 2021. (*Id.*)

In a March 9, 2021, discharge summary, Dr. Farha Rashad (not a party) noted that Plaintiff "had not been prescribed an adequate amount of [i]nsulin following his initial discharge from the hospital." (*Id.*) That same day, Plaintiff's blood glucose dropped to 254 mg/dL and Dr. Abraham discharged him from the hospital that evening. (*Id.*) Upon discharge, he placed Plaintiff "on a regimen of (NPH/Reg) 70-30—a significantly higher dosage than that prescribed by" Defendant. (*Id.*)

Based upon the foregoing, Plaintiff asserts three Eighth Amendment deliberate indifference claims against Defendant. (*Id.*, PageID.5–7.) He seeks compensatory and punitive damages as well as "all costs and expenditures associated with the prosecution of this civil action." (*Id.*, PageID.8.)

## II.     Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief

3

that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

As noted *supra*, Plaintiff asserts Eighth Amendment deliberate indifference claims against Defendant, a doctor at the War Memorial Hospital. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests. The first is the symbiotic relationship test, or nexus

test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58. Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970). Finally, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50; *see generally Lugar*, 457 U.S. at 936–39 (discussing three tests).

Plaintiff has presented no allegations from which the Court could fairly attribute Defendant's actions to the state. The fact that the War Memorial Hospital may receive public funding and that the hospital and its various medical providers are licensed by the State does not render them "state actors" for purposes of § 1983. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (nonprofit, privately operated school's receipt of public funds did not make its employee discharge decisions acts of state subject to suit under federal statute governing civil action for deprivation of rights); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (allegation that hospital and social worker were subject to state licensing was insufficient to support finding that defendants were acting under color of state law); *Adams v. Vandemark*, 855 F.2d 312, 315–16 (6th Cir. 1988) (fact that nonprofit corporation was funded almost entirely by public sources, and was subject to state regulation, without more, is insufficient to make private entity's decision to discharge employees attributable to state for purpose of § 1983 action). Moreover, even if Defendant treated Plaintiff at the State's request and expense, Defendant did not thereby become a state actor. *See Rendell-Baker*, 457 U.S. at 841 (noting that "[a]cts of such private contractors do not become acts

5

of the government by reason of their significant or even total engagement in performing public contracts"); *Styles v. McGinnis*, 28 F. App'x 362, 364 (6th Cir. 2001) (agreeing that an emergency room doctor did not become a state actor solely because he provided healthcare to a State inmate). For that reason alone, the Court will dismiss Plaintiff's complaint against Defendant for failure to allege state action.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:     August 19, 2022                    /s/ Robert J. Jonker
                                                              Robert J. Jonker
                                                              United States District Judge